Clare J. Hoyt, J.
Plaintiff, now deceased, and defendant were married in the State of New York in 1936. There are no issue of the marriage. Defendant was adjudged an incompetent in 1956 and in that year plaintiff obtained a judgment under the provisions of subdivision 5 of section 7 of the Domestic Belations Law annulling the marriage on the grounds of defendant’s incurable insanity which was found in that proceeding to have existed since prior to 1948. The court further found the defendant to have adequate means for her support and to be in no need of support from the plaintiff. In view of the provisions of the Domestic Belations Law, the court found that some form of undertaking should be furnished by the plaintiff and directed it in the amount of $1,000. Pursuant to the judgment the plaintiff as principal procured a surety bond in that amount to secure payment of the charges for the suitable care and maintenance of the defendant to the private institution where defendant was then confined and to any other person or persons having her custody. The plaintiff and one of defendant’s brothers were appointed and acted as her committee. Upon the death of the plaintiff another brother of the defendant was appointed committee and now acts as such with her other brother.
In 1959 the plaintiff died and in 1962 First National City Trust Company as executor under his last will and testament sought an order of this court to; (1) cancel the bond, or (2) substitute *1058 as principal thereon, in the place of the decedent plaintiff, his second wife who was the sole beneficiary of his estate, or (3) to authorize the deposit of $1,000 with the Orange County Treasurer in lieu of the bond.
This application was made to free plaintiff’s estate of its obligation on the bond and was allegedly justified because the defendant had an annual income of approximately $14,000 while the annual charges for her care amounted to around $10,000.
The special guardian appointed for the incompetent objected to the relief sought on the ground that defendant’s committee desired “ to intercede in the Surrogate’s Court, New York County (where the executor had filed its account and sought the settlement thereof) to see that additional funds are provided for the care of the incompetent should such be required in the future before .the proceeds are turned over to the second Mrs. Springett
The court, accordingly, denied the application 1 ‘ without prejudice to a renewal thereof after the committee for Amy Roberts Springett has had a reasonable opportunity to present his case to the Surrogate of New York County ”.
Thereupon, the committee interposed objections in the New York County Surrogate’s Court to the executor’s account and sought a determination that the entire fund be set aside as a reserve against the obligation of plaintiff’s estate to maintain the defendant during her lifetime.
The objections were dismissed and the Surrogate refused to set up a reserve to meet the contingent liability of plaintiff’s estate “ because of the fact that it has been demonstrated that to the extent he was liable his obligation was discharged during his lifetime by the provision he then made for his wife’s support (Matter of Springett, N. Y. L. J., Oct. 23, 1963, p. 13, col. 7.)
Subsequent to this decision the plaintiff’s executor First National City Bank (formerly First National City Trust Company) commenced the proceeding now before this court by order to show cause to cancel the original bond given by the plaintiff in the amount of $1,000. Service of the order was made as directed therein on the incompetent, her committee, the special guardian and the Department of Mental Hygiene of the State of New York.
The Department of Mental Hygiene has neither appeared nor submitted in opposition. The special guardian appeared and filed his report indicating that the defendant is not in need, that the income from the trusts created for her benefit will be sufficient to meet her needs for the rest of her life and, that in *1059 addition thereto, the principal could be invaded should the income be insufficient.
The committee opposes this application and cross-moves for an order amending the judgment of 1956 to provide for defendant’s care and support during her life by the plaintiff’s estate and to provide for additional security for the performance by the plaintiff’s estate of the judgment which is sought to be so amended.
From an agreed statement of facts submitted by the parties in the New York County Surrogate’s Court proceeding, which statement was presented in this proceeding, it is obvious that the income payable to the defendant’s committee, along with the right to invade principal, should that be necessary, is more than sufficient to care for the defendant during her lifetime. From an irrevocable trust created for the benefit of the defendant by the plaintiff having a principal of $42,703.46 in 1954, the defendant’s committee receives the income and the trustee is authorized to invade the principal, if necessary, for her proper care, comfort and support.
The defendant’s committee receives approximately $5,968 annually from a trust created by defendant’s father, with a power to invade the principal exercisable by the defendant’s committee to the extent of approximately $50,000, with the power in the trustee in its sole discretion to apply to the use of the defendant so much of the principal as is deemed advisable. The trustee is further authorized to apply to the use of the defendant income from trusts of equal amounts created for the benefit of the two brothers.
The committee holds property of the defendant having a current value of $55,000, this being in addition to defendant’s interests in the trusts hereinabove mentioned.
For the years 1956, the date of the committee’s appointment, through 1962 the income of the committee has exceeded the expense of her care and support by approximately $3,000 per year, the excess in 1962 being $3,417.39. Income for the year of 1962 was approximately $14,350. The corpus of the trusts created for the defendant by her father and her late husband, the plaintiff, in February of 1963 approximated $335,000 and, as indicated, such corpus may be invaded if her income is insufficient for her care and support. The defendant was born on June 2, 1895 and at present has a life expectancy of 9.47 years.
It is, thus, apparent that adequate provisions have been made for the care and support of the defendant by the plaintiff and by her father. The income of the trusts created for her benefit, along with the power to invade should such income be insuf *1060 ficient, and the assets of the defendant incompetent in the hands of her committee make it virtually certain that she will be adequately supported during her lifetime.
The provisions of the statute, section 141 of the Domestic Delations Law (formerly Domestic Delations Law, § 7, subd. 5), requiring that the court in the judgment direct that the plaintiff husband provide for the support of the wife and that security be exacted therefor, are to make certain that the wife is properly supported. This support must be furnished during the wife’s lifetime even after the death of her husband (Stevens v. Peoples Bank of Hamburg, 246 App. Div. 481). In determining the support for which the husband is liable, the court can consider income and assets that she would have other than those furnished by her husband (Phillips v. Phillips, 2 N Y 2d 742). The Surrogate in the proceedings for the settlement of the account of the executor, had he deemed it proper, could have charged the estate of the plaintiff with “ the value of the suitable support, care and maintenance to the wife during the balance of her life based upon appropriate mortality tables ” (Domestic Delations Law, § 141, subd. 1). This the Surrogate found unnecessary (Matter of Springett, supra).
In Matter of Finkenberg (12 Misc 2d 82, 84), Mr. Surrogate Di Falco held: “ Since the incompetent, as a beneficiary, now has ample property of her own which can be used towards the cost of her care and maintenance in the institution, there is no need to resort to other funds in the hands of the executors for that purpose.”
This is the situation of the defendant in the case at bar. Upon the Surrogate’s proper refusal to charge the plaintiff’s estate with a fund to give additional and unneeded support to the defendant, the continuance of the bond is no longer justified. A bond is given to insure the payment of an obligation. For the reasons above set forth, there is no further obligation on the part of the plaintiff’s estate in favor of the defendant.
The motion to cancel the bond is, thus, granted and the cross motion is denied.