In the Matter of the Estate of Rosa F. H. Cooke, Deceased.

Surrogate's Court, New York County, March 30, 1944.

*Beals & Nicholson* for Chemical Bank & Trust Company and another, as executors and trustees of trusts for Alice Lee and others, petitioners.

*Brown, Brenton & Watts* for Charles A. White, as committee of William W. J. Cooke, an incompetent, respondent.

*Nathaniel L. Goldstein, Attorney-General* (*Louis Winer* of counsel), for Middletown State Homeopathic Hospital, respondent.

*Joseph A. Cox,* special guardian of William W. J. Cooke, an incompetent.

*John J. Fay,* special guardian of Walter T. Lahey, Jr., and others, infant remaindermen.

FOLEY, S. This is an accounting of the transactions of the executors and trustees as to three trusts created by the will. Dispute only arises as to the income of the trusts created for the benefit of William Wilbur James Cooke as life tenant. He is the husband of the testatrix. She died on November 25, 1933. The life tenant was adjudicated as an incompetent on May 8, 1933. He was committed to the Middletown State Homeopathic Hospital where he has since continued as a patient.

The principal question presented is the right of the State of New York, through its duly constituted officer, to obtain reimbursement for the support of the incompetent out of his income. The claim of the State is asserted through the Attorney-General.

Subordinate questions are also raised by the objections filed by the committee of the incompetent to the account.

The attorneys for the committee withdrew from representation during the course of the proceeding for reasons which need not be discussed here. The rights of the incompetent, however, have been protected by the personal appearance of the committee, who is an attorney and who has acted in good faith in the proceeding. Such rights were also protected by a special guardian of ability and experience who was appointed by the Surrogate to act without compensation.

The conceded facts have been made the subject of a stipulation of the attorneys which has commendably avoided the necessity for the submission of oral and documentary proof.

The claim of the State hospital for the cost of the past and future support and maintenance of the incompetent life tenant is allowed in the amounts requested. It is directed to be paid out of the accrued income in the hands of the executors and trustees and out of income hereafter earned. The incompetent life tenant has been maintained as a free patient at the State institution for several years past. The State has obtained no reimbursement from his property or his income from the trusts for the cost of his maintenance. The claim of the State now presented covers a period beginning June 1, 1940. Aside from the income here involved, the incompetent has no property whatsoever.

This court has unquestioned jurisdiction under the provisions of the Surrogate's Court Act and the equitable powers conferred by section 40 thereof to direct the reimbursement to the State out of the income of the incompetent. The law applicable to the rights of creditors or judgment creditors to reach the surplus income of a competent or incompetent life tenant of a spendthrift trust is firmly established. The statutory rights granted to the State to enforce the collection of amounts due it for the support of an incompetent life tenant are equally clear.

The following principles apply:

(1) Under section 98 of the Real Property Law the surplus income " beyond the sum necessary for the education and support of the beneficiary, shall be liable to the claims of his creditors * * *." The determination of what is a reasonable sum necessary for the support of the beneficiary may be made in an action in equity or a proceeding in the Surrogate's Court under its equitable jurisdiction. (*Matter of Ungrich,* 201 N. Y. 415, 419; *Matter of Raymond* v. *Davis,* 248 N. Y. 67; *Matter of Amelia Ann Yard,* 116 Misc. 19.)

(2) The income of the beneficiary may also be made subject to a garnishee proceeding under section 684 of the Civil Practice Act where it exceeds certain specific amounts. This section is academic in the present proceeding since that form of relief is not sought and would not in any event be enforcible because the annual income in no way approaches the minimum exempt annual allowances under the Civil Practice Act.

(3) Where the beneficiary is an incompetent and is a patient of a State hospital, as here, the appropriate State official may move directly against the trustee to have the income applied

to the reimbursement of the State for the expense of support under the provisions of the Mental Hygiene Law. Section 24-a of that Law declares that the institutions are intended to be maintained for the care and treatment " of poor and indigent persons ". It is provided, nevertheless, that persons not within that class may be maintained as patients at certain specified costs fixed by the Commissioner of Mental Hygiene. Under subdivision 2 of that section the " trustee of a trust fund established for the support of a patient " is made liable and responsible for the cost of the care and treatment of the patient. The Commissioner, through the Attorney-General, may enforce the collection of the cost of support as against such a trustee or from any person having property of the incompetent.

Under section 40 of the Mental Hygiene Law express authority is granted for the enforcement of the right of recovery of the amount charged and due for the support of any patient in a State institution. Moreover, its terms declare that in all claims of the State upon the moneys or property of a patient " the state shall be deemed a preferred creditor." (*Matter of Andrews,* 179 Misc. 876.)

The claim of the judgment creditor in the pending proceeding, that all income should be applied on his judgment, ignores these principles and statutes and entirely disregards the rights of the State as a preferred creditor. The judgment creditor has no lien upon the funds of the incompetent and his claim is therefore subordinate to that of the State. (*Matter of Wesley,* 156 App. Div. 403; *Matter of Carnegie Trust Company,* 206 N. Y. 390, 397.) The prior proceedings in the Supreme Court, which permitted the judgment creditor, to the detriment of the State, to obtain payment of large sums of money held by the committee, are in no way controlling here where different funds are involved. It is conceded that the absolute preference accorded to the State by the Mental Hygiene Law was never called to the attention of the judicial officers who made the determinations in the Supreme Court.

Moreover, on this phase of the proceeding the Surrogate holds that the order of the Supreme Court dated February 24, 1941, which contains directions for the payment of accrued and future income to the judgment creditor, is not applicable to the facts and the law of the pending proceeding. It probably was intended to apply only to surplus income above the amount required to be paid as a preferred debt to the State for the support of the incompetent by virtue of the statutory mandate. Although the order has no present force and, because of the inadequacy of

income, never can be of any force, it would appear that an application should be made to vacate its terms, particularly under the provisions of the above-quoted sections of the Mental Hygiene Law.

The Surrogate finds that pursuant to the terms of section 98 of the Real Property Law the amount of income of the trust is necessary for the support of the incompetent. He directs that all the accrued income now in the hands of the executors and trustees due the incompetent life tenant shall be paid to the State hospital on account of its established claim. The amount of the principal of the trust funds in which the incompetent has a present right to income is about $17,000. The income approximates $500 per year. It is less than the amount claimed by the State hospital and allowed by the Surrogate as the annual cost of maintenance.

The trustees are directed to pay all future income up to the amount of the established cost of maintenance to the State hospital for the support of the incompetent. Even though actual income is less than the amount of the established claim, its payment will partially reimburse the taxpayers of the State. Moreover, the executors and trustees are directed to pay the amounts allowed herein directly to the State rather than to the committee of the incompetent. Circuity and delay will thus be avoided. The objective of section 24-a of the Mental Hygiene Law, quoted above, is directness. Under it the State is not required to bear the unnecessary expense of commissions of the committee and attorney's fees.

[Other directions included in the original decision of the Surrogate omitted because of their subordinate importance.]

Submit decree on notice settling the account in accordance with this decision and the prior decision of the Surrogate. (N. Y. L. J. Mar. 7, 1944, p. 903, col. 3.)