John J. McCall, S.
The committee of Leroy Steiner, an incompetent and an income beneficiary of a trust established under the last will and testament of his sister, Grace E. Bins, seeks an order of this court directing the trustee to invade the principal of said trust in order to pay charges of the State Department of Mental Hygiene for care and services rendered to the incompetent as a State hospital inmate. The charge levied was $180 per month and there was due and owing the sum of $9,998.20 as of April 1, 1964. It also appeared from the petition that the-incompetent was the owner of a bank account in the sum of $2,519.64 and that he receives $145 quarterly from the trustee as the income of the trust. The petitioner further alleges demand upon the trustee to invade and pay on behalf of the incompetent. In reply thereto, the trustee admits noncompliance with the demand, alleging affirmatively that the refusal was a proper exercise of discretion under the terms of the will creating the trust.
The answer to the question here is a construction of the appropriate paragraph of the will. It reads as follows: “ Fifth: — I give and bequeath and devise to the National Commercial Bank and Trust Company of Albany, in trust, nevertheless, one-fourtli of all the rest, residue and remainder of my property, to be deposited and kept deposited in one or more of the savings banks of this state, at savings bank interest, and I direct said trustee to pay said interest semi-annually to my brother, Leroy Stiner, for and during the term of his natural life, and in the event of the sickness, physical or mental, of said Leroy Stiner, I hereby give said trustee power, in its discretion, to pay out of said principal or corpus, a sufficient amount or amounts, from time to time, for medicines, medical services, nursing, treatments, confinement in hospitals or sanatoriums, care and attention for said Leroy Stiner; and at the death of said Leroy Stiner this trust shall cease, and at his death, I give, devise and bequeath all of said principal and corpus, or what is left, and the interest, if any, unpaid, to my said nieces surviving him, to be divided between them equally, share and share alike; provided however, that if any of my said nieces should die before his death. *923 leaving lawful issue, him surviving, I give, devise and bequeath to such issue the share the parent would have taken if living at said Leroy Stiner’s death.”
It is elementary that the guiding star of interpretation in situations of this character is the intent of the testator as manifested in terms of the will. Unnecessary is the citation of authorities in support of this proposition of law. It has likewise been universally held that discretion given is rarely an unfettered one and must be exercised in such reasonable manner as to accomplish and not thwart the very purpose of the trust (Matter of Levison, 29 Misc 2d 697, 698; Collister v. Fassitt, 163 N. Y. 281; Matter of Van Zandt, 231 App. Div. 381, 384). The trustee here concedes the right of the court to intervene in a proper case, citing Matter of Shea (234 App. Div. 176) and Matter of Geier (216 N. Y. S. 2d 240, 243).
The invasion here was for specific purposes, to wit, medicine, medical services, nursing, treatments, confinements in hospitals or sanatoriums, care attention, all in the event of the sickness, physical or mental of Leroy Steiner. A sufficient amount or amounts were to be paid and from time to time. It cannot be gainsaid that the testatrix wanted her brother to have complete medical care and she did not leave it to the trustee’s discretion as to what the elements of that care were to be. She defined them very broadly indeed, if not all-inclusively. She anticipated the variance in amounts and the possible necessity for repetitive payments. She foresaw invasions, for the remainder gift is “ what is left ” of the corpus. Inescapable is the conclusion that Grace Bins’ primary purpose in writing the paragraph of the will was that the money that was the subject matter thereof was first and foremost to be used to give her brother proper medical care. Such purpose stands out in such bold, broad relief that almost any denial of its use for that end would nullify her intention. She did give the trustee discretion but the only way he could possibly exercise it and stay within her command was to require other means of the beneficiary to be used first. Since what he has is insufficient, this trustee has the duty to invade, and the contrary exercise of discretion is nonperformance of the duty. Depletion of the fund, even extinction might result, yet that, too, can be held within the contemplation of the testatrix. The court is aware of the fact that it is, in effect, exercising control here, but it is a proper ease for such action.
Trustee argues that if the beneficiary approaches or lives beyond his life expectancy, the invasion proposed would leave inadequate funds for burial. It further suggests that if he ceased to be a State charge, there would be inadequate funds *924 to provide for him. This sort of reasoning is not persuasive. As of the moment, the beneficiary is a public charge and the payments from the corpus will eliminate him from that status. Incidentally, it can well be said from a reading of the testatrix’ words that the last thing she intended was that her brother become a public charge. It might very well be that ultimately he will become such, but certainly she wanted the money used to delay that eventuality as long as possible.
Not directly in point here but pertinent to the whole picture is the proposition that the State department could directly seek the income (Matter of Cooke, 181 Misc. 748; Surrogate’s Ct. Act, § 40; Mental Hygiene Law, § 24, subd. 1), and possibly the corpus (Matter of Surbeck, 185 Misc. 635). In the last-mentioned case the will contained a direction to use rather than a discretion, but, considering the interpretation given the present clause, the court would very well follow Surbeck.
The court determines an invasion proper and will enter the appropriate order. Income, past and present is to be first applied to the charges. In the interest of good order, completeness and finality, the exact financial situation should be brought up to date. The parties shall submit, by February 1, all current financial data as to principal, interest and the proposed State rate. The State department may submit through the parties or as amicus curies.